**UNITED STATES of America**

v.

**Darrell REAVES.**

**Crim. A. No. 91–00570–16.**

United States District Court, E.D. Pennsylvania.

Jan. 22, 1993.

Joel Friedman, Asst. U.S. Atty., Strike Force, U.S. Attorney's Office, Philadelphia, PA, for government.

Hope C. Lefeber, Philadelphia, PA, for defendant.

## MEMORANDUM/ORDER

KATZ, District Judge.

AND NOW, this 22nd day of January, 1993, pursuant to Rule 32(c)(3)(D), Fed. R.Crim.P., it is hereby ORDERED that the following findings and determinations of the court be appended to the presentence investigation report in this case and shall accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons. I rule on the Defendant's objections to the presentence investigation report as follows:

1. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 36 that states Defendant was a member of the Junior Black Mafia ("JBM") since 1986. Defendant states that the relevant date for his entry into the conspiracy is July 1990.

RULING: This court finds that the Defendant became a member of the JBM in 1987. Rodney Carson testified that he observed the Defendant receiving drugs in 1986 or 1987 from Aaron Jones, and this court will take the more conservative date of 1987. *See Testimony of Rodney Carson*, 6/19/92, am session, pp. 53–54. The Defendant also attended the meeting in which Aaron Jones discussed the fact leader James Cole was withdrawing from the organization, but that Jones would be taking over Cole's California connection (supplier of cocaine), Earl Stewart. *See Testimony of Rodney Carson*, 6/19/92, am session, pp. 60–61. Earl Stewart began supplying cocaine to the JBM in early 1988. *See Testimony of Earl Stewart*, 6/23/92, pp. 171–72.

2. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 37 that he had drug transactions with Rodney Carson. Defendant also states that statements in this paragraph linking Defendant to his brother, Reginald Reaves, are taken out of context and are contrary to the evidence.

RULING: This court finds that Carson observed at least two drug transactions involving the Defendant. On the first occasion, Carson saw the Defendant receive a half kilogram of cocaine from Jones at Fayette Street in the Mt. Airy section in 1986 or 1987. *See Testimony of Rodney Carson*, 6/19/92 at pp. 53–54. In 1988 or 1989, Carson was with the Defendant's brother, Reginald, at 52nd and Baltimore waiting for Shawn Davis, who was bringing Reginald a package which Carson believed to contain 10 kilograms of cocaine. *See Testimony of Rodney Carson*, 6/19/92, am session, at pp. 55–56. The Defendant arrived and he and his brother went to their grandmother's house with Davis who was carrying a duffel bag. *See id.* Carson observed Davis leaving the house with a smaller bag which Carson understood to contain kilograms of cocaine. *See id.*

This court further finds that the testimony at trial indicated that the Defendant's role in the JBM was as "the right hand man of Reggie Reaves" and that the Defendant told Carson the Defendant was "his brother's man" and "[t]hey got west Philly sewed up" referring to the drug business in West Philadelphia. *See Testimony of Rodney Carson*, 6/19/92, am session, p. 53.

3. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 38 that states the Defendant was present at JBM meetings in which drugs were discussed.

RULING: This court finds that the Defendant attended the meeting in which Aaron Jones discussed the fact that James Cole was withdrawing from the organization, but that Jones would be taking over Cole's California connection (supplier of cocaine), Earl Stewart. *See Testimony of*

*Rodney Carson,* 6/19/92, am session, pp. 60–61. In addition, this court finds that the Defendant attended a meeting of JBM members before the shooting at 24th and Moore. *See Testimony of Rodney Carson,* 6/19/92, am session, pp. 101–104.

4. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 39 that he had a firearm and wore a bulletproof vest.

RULING: This court finds that Defendant was observed in possession of a firearm and wearing a bulletproof vest. *See Testimony of Rodney Carson,* 6/19/92, am session, p. 56; *see also Testimony of William Mead,* 6/26/92, am session, p. 34 (testifying that he saw Defendant with a firearm).

5. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 41 that sums up the following: the Defendant was a member of the JBM from 1986; the Defendant was involved with his brother; and the Defendant attended JBM meetings, carried a gun, and wore a bulletproof vest.

RULING: This court finds that the Defendant was a member of the JBM from 1987, *see* court's ruling *supra* at ¶ 1; the Defendant was involved with his brother, *see* court's ruling *supra* at ¶ 2; the Defendant attended JBM meetings, *see* court's ruling *supra* at ¶ 3; and the Defendant possessed a firearm and wore a bulletproof vest, *see* court's ruling *supra* at ¶ 4.

■ 6. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 43 which denies the Defendant a two-level reduction for acceptance of responsibility.

RULING: This court finds that the Defendant has not admitted being involved in the activities of the JBM. *See* U.S.S.G. § 3E1.1, Application Note 1(a) (noting that one element appropriate for consideration in whether a reduction is warranted includes the defendant's truthfully admitting conduct comprising the offense). While one factor of acceptance of responsibility includes post-offense rehabilitative efforts, such as drug treatment, this court finds

that Defendant's drug rehabilitation alone, without admission of his unlawful conduct, does not entitle him to a reduction. *See* U.S.S.G. § 3E1.1, Application Note 1(g). Furthermore, while the court may grant the two-level reduction to the defendant who goes to trial to preserve issues unrelated to factual guilt, *see* U.S.S.G. § 3E1.1, Application Note 2 (i.e., to preserve a constitutional challenge), such circumstances do not exist in this case. Therefore, this court finds acceptance of responsibility has not been demonstrated and the two-level reduction is not warranted.

■ 7. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 45, which sets the Defendant's base offense level at a level 40.

RULING: This court finds that given the quantity of drugs attributable to Reaves, approximately 564.5 kilograms of cocaine, the correct base offense level is a level 40. For a defendant to whom quantities of cocaine can be attributed, which are at least 500 kilograms but less than 1500 kilograms, the proper base offense level is 40. *See* U.S.S.G. § 2D1.1(c).

This court finds that the amount of drugs attributable to Reaves includes those amounts with which he was personally involved; specifically, the half kilogram he received from Jones in 1986 or 1987; the ten kilograms of cocaine delivered by Shawn Davis to his brother in which Reaves was present in 1988 or 1989; and the approximately 9 ounces [or 255.15 grams] of cocaine Reaves delivered to Darrell Jamison at the end of 1988 and beginning of 1989. *See Testimony of Rodney Carson,* 6/19/92, am session, pp. 54 (half kilogram transaction); pp. 54–56 (10 kilogram transaction); *Testimony of Darrell Jamison,* 7/1/92, pp. 62–63 (testifying that Reaves gave him between four and a half to nine ounces on two or three occasions; this court will interpret this at its most conservative, that is, four and a half ounces on two occasions).

■ In addition to the amount of drugs with which Reaves had personal involve-

ment, the total amount of drugs attributable to Reaves also includes those amounts calculated through accomplice attribution. *See United States v. Collado,* 975 F.2d 985 (3d Cir.1992). The amounts attributable to Reaves through his work in the JBM are those amounts of cocaine which (1) were in furtherance of the jointly-undertaken criminal activity, (2) were within the scope of his agreement with the JBM, and (3) were reasonably foreseeable in connection with this criminal activity Reaves agreed to undertake. *See Collado,* 975 F.2d at 995; *see also* U.S.S.G. § 1B1.3 and Commentary.

The JBM was a criminal organization which had as its primary purpose the distribution of large quantities of cocaine. Darrell Reaves worked for his brother, who was in charge of the drug distribution squad that covered the West Philadelphia area. *See Testimony of Rodney Carson,* 6/19/92, am session, p. 53–54. Therefore, the scope of Reaves' agreement with the JBM was that of a drug distributor. During the course of his participation in the JBM, Reaves also attended JBM meetings and on occasion wore his brother's JBM diamond initial ring. *See Testimony of Rodney Carson,* 6/19/92, am session, pp. 60–61 (attendance at JBM meeting); pp. 90–91 (wearing JBM ring); 101–104 (attendance at meeting before 24th and Moore shooting). In addition, Reaves participated in the shoot out at City Hall with Craig Haynes, leader of a rival gang, in March 1989. *See Testimony of Rodney Carson,* 6/19/92, am session, at pp. 99–100. Reaves supplied keys to a car used by one of the enforcer squads in the July 11, 1989, shooting at 24th and Moore, in which an innocent bystander was killed. *See Testimony of Rodney Carson,* 6/19/92, am session, at pp. 101–104. All amounts of drugs that the organization bought and sold during the period Reaves was involved with the JBM should be attributed to Reaves based on the fact that such drugs furthered the criminal activity Reaves undertook jointly with the JBM as a member of the organization and was within Reaves' agreement to act as a drug distributor for the JBM.

During the time that Reaves was involved in the activities of the JBM, the organization distributed in excess of 500 kilograms of cocaine. Earl Stewart testified that he delivered approximately 554 kilograms of cocaine to the JBM beginning in early 1988. *See Testimony of Earl Stewart,* 6/23/92, p. 174 (delivery of 20 kilograms of cocaine), pp. 175–76 (delivery of 50 kilograms of cocaine), p. 178 (delivery of 4 kilograms of cocaine), p. 183 (delivery of 100 kilograms of cocaine), pp. 184–87 (delivery of 150 kilograms of cocaine), pp. 197–200 (delivery of 230 kilograms of cocaine). Furthermore, Reaves was present during the meeting where Jones discussed the fact that James Cole was leaving the JBM, but that Cole was leaving Jones with the California connect, referring to drug supplier Earl Stewart. *See Testimony of Rodney Carson,* 4/7/92 at p. 110–11. Therefore, it was reasonably foreseeable to Reaves that Stewart would remain a drug connection for the JBM and would provide the organization with a large supply of drugs for the purpose of distribution. Based upon Reaves' attendance at JBM meetings and closeness to the organization as demonstrated by his relationship with his brother, his participation in two violent acts of the JBM, and the fact he was seen wearing a JBM initial ring, in addition to his own participation in cocaine deliveries, it was reasonably foreseeable to Reaves that the JBM was distributing in excess of 500 kilograms of cocaine.

In viewing Reaves' involvement with the JBM and having undertaken a searching and individualized inquiry into his role, this court finds that attributing approximately 564.5 kilograms of cocaine to Reaves, which places him in a base offense level of 40, will produce a sentence that accurately reflects his active role in the JBM crime organization.

 8. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 46 which gives the Defendant a two-level enhancement for possession of a firearm during the commission of the offense pursuant to U.S.S.G. § 2D1.1(b)(1).

RULING: This court finds the two-level enhancement is warranted as there is a preponderance of the evidence that the Defendant did possess a firearm during the commission of the present offense. *See* this court's ruling *supra* at ¶ 4. This court further finds that enhancement for the special characteristic of possession of a firearm is warranted "if the weapon is present unless it was clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b), Application Note 3. This cannot be demonstrated as Defendant participated in the shoot out at City Hall with Craig Haynes in March 1989. *See Testimony of Rodney Carson*, 6/19/92, am session, 99–100. Therefore, the two-level enhancement is warranted.

■ 9. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 47, and states that he should be given at least a two-level reduction as a minor participant, if not a four-level reduction as a minimal participant, in the conspiracy pursuant to U.S.S.G. § 3B1.2.

RULING: This court finds that the defendant's conduct does not warrant a reduction for mitigating factors under any of U.S.S.G. § 3B1.2's considerations. The minimal participant reduction is intended for those defendants "who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, Application Note 1. Indicators of a minimal participant include "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id.* Furthermore, as the Guidelines indicate, "[i]t is intended that the downward adjustment for a minimal participant will be used infrequently." U.S.S.G. § 3B1.2, Application Note 2. The Defendant was involved in distributing drugs in his brother's squad, and was his brother's "right-hand man." Defendant attended JBM meetings; and Defendant was involved in at least two violent acts of the organization. Over 564.5 kilograms of cocaine can be attributed to the Defendant. Therefore, this court finds that there are no factors under which the Defendant could be deemed a minimal participant and warrant a four-level reduction. This court further finds that the Defendant does not qualify for a two-level reduction as a minor participant as the Defendant has not demonstrated by a preponderance of the evidence that he was less culpable than most other participants. *See* U.S.S.G. § 3B1.2, Application Note 3.

10. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 50 which gives the Defendant a subtotal offense level of 42.

·RULING: This court finds a subtotal offense level of 42 is accurate based upon its finding that over 564.5 kilograms of cocaine are attributable to the Defendant, *see* court's ruling *supra* at ¶ 7, and a two-level increase is warranted for possession of a firearm during the offense, *see* court's ruling *supra* at ¶ 8.

11. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 51 which gives the Defendant no reduction for acceptance of responsibility.

RULING: This court finds that the Defendant has no accepted responsibility and is not eligible for such a reduction. *See* court's ruling *supra* at ¶ 6.

12. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 52 which gives the Defendant a total offense level of 42. Defendant contends this should be a total offense level of 20.

RULING: This court finds a total offense level of 42 is accurate based upon its finding that over 564.5 kilograms of cocaine are attributable to the Defendant, *see* court's ruling *supra* at ¶ 7, and the fact that a two-level increase is warranted for possession of a firearm during the offense, *see* court's ruling *supra* at ¶ 8.

13. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 54 and states that this offense should not be included in determining his criminal history category since there was no disposition on these charges.

RULING: This court finds there was a disposition of this case and the criminal history point is properly calculated.

14. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 57 that gives him a total of five criminal history points. Defendant states that under U.S.S.G. § 4A1.1(c) only a maximum of four points may be added under this item, therefore, only four points are includable.

RULING: This court finds that a total of only two points resulted from use of U.S.S.G. § 4A1.1(c), the conviction listed at Paragraph 54 (one point) and the conviction listed at Paragraph 56 (one point). The conviction listed at Paragraph 55 totaled three points based upon § 4A1.1(a). Therefore, this court finds that all five points are properly included.

■ 15. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 59 which sets Defendant's Criminal History at a Category IV. Defendant states that he is entitled to a downward departure as these "minor offenses 'exaggerate' his criminal history score" citing *United States v. Summers*, 893 F.2d 63, 67 (4th Cir.1990).

RULING: This court finds it has the authority to grant downward departures in this area, however, the nature of this Defendant's circumstances do not warrant such a departure. This court finds Defendant's criminal history score is not exaggerated as the Defendant has been involved in crimes involving assault connected with a firearm and involving illegal drugs both possession and possession with intent to deliver.

16. Through counsel, the Defendant objects to the statement in the Presentence Report in Paragraph 63, which sets the Defendant's guideline imprisonment range at 360 months to life, based upon a offense level 42 and criminal history IV.

RULING: This court finds that based upon its findings discussed above that the proper guideline imprisonment range is 360 months to life, as the Defendant has a total offense level of 42 and a criminal history category of IV.

■ 17. Through counsel, the Defendant argues that the court may depart downward from the applicable guideline due to the Defendant's significantly reduced mental capacity under U.S.S.G. § 5K2.13 or due to the Defendant's post-offense, pre-sentence recovery from drug addiction and his personal transformation (commitment to religion and an affirmation of society's laws).

■ RULING: This court finds it has the authority to grant downward departures in cases where the facts demonstrate such reductions are necessary. This court, however, does not find circumstances warranting a downward departure to exist in this case. For Defendant's first argument for downward departure to succeed, the defendant must demonstrate first that he had a significantly reduced mental capacity and then that this mental capacity contributed to the commission of the offense. *See United States v. Frazier*, 979 F.2d 1227 (7th Cir.1992); *see also* U.S.S.G. § 5K2.13. Such circumstances have not been established to exist in the Defendant's case. This court has discretion to grant a departure for mitigating circumstances of a kind or to a degree not adequately taken into consideration by the Guidelines, pursuant to U.S.S.G. § 5K2.0. It is this court's finding, however, that it will not exercise its discretion to depart based upon that Defendant's rehabilitation and personal choices.